**BOROUGH OF WALNUTPORT**

v.

**Timothy DENNIS, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Sept. 14, 2010.
Decided Dec. 3, 2010.
Reargument Denied Jan. 21, 2011.

Joseph P. Maher, Allentown, for appellant.

Michael F. Corriere, Bethlehem, for appellee.

BEFORE: PELLEGRINI, Judge, BUTLER, Judge, and FLAHERTY, Senior Judge.

OPINION BY Senior Judge FLAHERTY.

Timothy Dennis (Dennis) appeals from an order of the Court of Common Pleas of Northampton County (trial court) which entered an *in rem* judgment in the amount of $9,074.47 in favor of the Borough of Walnutport (Borough) and against Dennis, stating that such judgment may be enforced pursuant to Pa. R.C.P. No. 3190, against property located at 645 Lehigh Gap Street, Walnutport, Northampton County (Property). We affirm in part and reverse in part.

On April 14, 1982, Dennis and his wife, Rosemary G. Dennis (Rosemary), purchased the Property. Subsequently, Dennis and Rosemary divorced and on May 1, 1990. Rosemary conveyed her interest in the Property to Dennis and Dennis agreed to hold Rosemary harmless with regard to any expenses or liens associated with the Property. However, Dennis never recorded this deed. Due to the present litigation, Rosemary discovered the deed was not recorded and, ultimately, Dennis recorded a new deed on June 7, 2007 conveying the property.[1] Dennis maintained a

---

1. At the time of trial, all claims against Rosemary were dismissed.

post office box in Walnutport, Pennsylvania and has been the only person with access to that box.

On March 17, 1986, the Borough enacted Ordinance No. 86–2, which authorized the Borough to reconstruct streets in the Borough. The ordinance also authorized the Borough to install curbing on properties abutting those streets if the owner failed to do so within ninety days of receiving written notice. Ordinance No. 86–2 amended Ordinance No. 80–4, which had been enacted on September 22, 1980, and stated that if a landowner failed to install curbing after notice, the Borough could install the curbing and then collect from the owner the costs thereof "as provided in the Borough Code and/or other applicable laws, statutes, rules and regulations." Ordinance No. 80–4, Section II(g).

On November 11, 1993, the Borough passed Ordinance No. 89–4, which described and opened Lehigh Gap Street as a public street, authorized its grade and curbing alignment to be set in due course, and authorized the Borough's secretary to notify abutting landowners.

On March 4, 1994, the Borough secretary, Natalie C. Kirchner (Secretary), sent a letter to Dennis at the Property, which was returned unclaimed. The Secretary was notified that the letter should be sent to the Post Office Box (P.O. Box) 119 address. On May 10, 1994, the Secretary sent a second certified letter to Dennis at P.O. Box 119. The letter indicated that Lehigh Gap Street was scheduled for reconstruction and that curbing had to be installed by August 13, 1994. On May 28, 1994, a signed certified receipt was returned to the Borough.

On or after June 9, 1994, a third letter was sent to Dennis addressed to P.O. Box 119, which was unclaimed. At the July 7, 1994 Borough meeting, the Secretary indicated that Dennis had received his notice in May so curbing should not be installed for ninety (90) days from that date.

Dennis did not install curbing within the ninety days after receiving the notice. The Borough retained a contractor, Clark DeLong (DeLong), to install the curbing on the Property. The curbing was installed in September of 1994, and the Borough paid $3,822.25 for the curbing permit, the installation, the cutting down of two trees, the removing of stumps and legal fees. Of that amount, $500.00 was paid for the removal of two trees and stumps that were later determined to be on property not owned by Dennis.[2]

On October 13, 1994, the Borough filed a municipal lien for improvements to the Property in the amount of $3,822.25. On June 21, 1995, the Secretary forwarded a letter to P.O. Box 119, indicating that a lien was placed on the Property. On December 29, 2004, the Borough filed a writ of *scire facias*. After efforts to serve the writ failed, the writ was reissued on March 9, 2007.

On April 27, 2007, Dennis filed an affidavit of defense, which included a demurrer, a motion to dismiss, an answer, defenses, and a counterclaim. On May 16, 2007, the Borough filed a demurrer to Dennis's affidavit of defense.

On August 9, 2007, pursuant to Section 3 of the Act of May 16, 1923, P.L. 207, *as amended,* 53 P.S. § 7106(a.1) (Municipal Claims Act), the Borough enacted Ordinance No. 2007–12 which authorized the Borough to collect "all charges, expenses

---

**2.** The Borough withdrew its claim for reimbursement for the removal of the trees at the time of the hearing before the trial court.

and attorney fees incurred in the collection of any delinquent account."

On November 5, 2007, the trial court sustained, in part, Dennis's demurrer and granted the Borough twenty days to amend its lien. The trial court also sustained the Borough's demurrer, in part, dismissing several of Dennis's defenses. Dennis was granted leave to file an amended affidavit of defense.

On November 26, 2007, the Borough filed an amended lien for improvements to the Property in the amount of $3,822.25. On December 21, 2007, Dennis filed an amended affidavit of defense, which included an answer to the amended lien, new matter, four defenses (insufficient notice, Ordinance fails to provide due process, fraud and mistake) and two claims for damages. The first claim for damages contained Dennis's allegation that the Borough damaged the Property in widening the street and installing the curb. The second claim for damages requested that a board of viewers be appointed to assess whether the Borough condemned a portion of the Property in widening Lehigh Gap Street.

The trial court held a hearing on May 26 and 27, 2009. The Borough presented the testimony of Rosemary, as on cross, the Secretary, Borough solicitor David Backenstoe (Backenstoe), and Amy Loefflad Kunkel, an engineer for the Borough (Kunkel). Dennis presented Donald J. Ronca, a general contractor (Ronca), and then Dennis testified on his own behalf prior to calling the Secretary on rebuttal.[3]

The trial court determined that the Borough was authorized to widen Lehigh Gap Street pursuant to applicable Borough or-

dinances and resolutions, that the Borough properly notified Dennis of his obligation to install curbing in connection with the widening of Lehigh Gap Street, that Dennis did not install the curbing as required, and that the Borough was authorized to install the curbing and did so at a cost of $3222.25. The trial court further determined that Dennis was obligated to reimburse the Borough for the installation of the curbing and that Section 9 of the Municipal Claims Act, *as amended*, 53 P.S. § 7143, does not require the Borough to enact an ordinance setting the interest rate, but rather, simply allows the Borough to assess an interest rate not to exceed 10% per annum.

The trial court found that Dennis received sufficient notice of the Borough's demand for installing the curb; that the Borough properly enacted Ordinance No. 86–2; and that Dennis's assertion that the ordinance is unconstitutional is without merit. The trial court further found that Dennis failed to prove that the Property sustained any damage as a result of the Borough, its agents or employees. In addition, the trial court found that pursuant to Ordinance No. 80–4, Section II, Dennis is responsible for all grading on the Property and that Dennis's claim that the Borough condemned a portion of the Property was not properly before the trial court, as it must be brought before a board of viewers.

■ The trial court found that the Borough was entitled to interest in the amount of $4,668.60, and attorney fees in the amount of $1,183.62. It determined that the total owed to the Borough was $9,074.47. Dennis appealed to this court.[4]

---

3. Ronca estimated the cost of repairing the damages that the Borough's excavation activities had caused to Dennis's Property at $34,900.00.

4. Our review is limited to whether the findings of fact are supported by substantial evidence, whether the trial court abused its discretion or committed an error of law. *Strand*

Dennis contends that the Borough failed to meet its burden of proof in that the Borough is not entitled to collect attorney fees from Dennis; that it is not entitled to collect interest at the rate of 10%, or for that matter, in any amount; and that it did not properly serve notice upon the owners of the Property prior to filing its municipal lien. Dennis further contends that the trial court abused its discretion and/or erred as a matter of law in determining that Dennis had failed to prove that the Property sustained damage as a result of the Borough installing curbing abutting the Property and in determining that Dennis could not present a valid counter claim for eminent domain, or in the alternative, in not appointing a board of viewers, as Dennis had requested in his amended affidavit of defense.

■ First, Dennis contends that the Borough failed to meet its burden of proof that it is entitled to collect attorney fees from Dennis. Section 3 of the Municipal Claims Act, *as amended,* 53 P.S. § 7106, subsections (a.1), (a.2), and (a.3), *added by,* the Act of February 7, 1996, P.L. 1, states in pertinent part as follows:

(a) All municipal claims, municipal liens ... which may hereafter be lawfully imposed or assessed on any property in this Commonwealth, and all such claims heretofore lawfully imposed or assessed within six months before the passage of this act and not yet liened, in the manner and to the extent hereinafter set forth, shall be and they are hereby declared to be a lien on said property, together with all charges, expenses, *and fees incurred in the collection of any delinquent account, including reasonable attorney fees under subsection (a.1), added thereto for failure to pay promptly* ....

*v. Chester Police Department,* 687 A.2d 872

(a.1) It is not the intent of this subsection to require owners to pay, or municipalities to sanction, inappropriate or unreasonable attorney fees, charges or expenses for routine functions. Attorney fees incurred in the collection of any delinquent account, including municipal claims, municipal liens ... shall be in an amount sufficient to compensate attorneys undertaking collection and representation of a municipality or its assignee in any actions in law or equity involving claims arising under this act. A municipality by ordinance, or by resolution if the municipality is of a class which does not have the power to enact an ordinance, shall adopt the schedule of attorney fees. Where attorney fees are sought to be collected in connection with the collection of a delinquent account, including municipal claims, municipal liens ... the owner may petition the court of common pleas in the county where the property subject to the municipal claim and lien ... is located to adjudicate the reasonableness of the attorney fees imposed....

(a.2) Any time attorney fees are awarded pursuant to any provision of law, the municipality shall not be entitled to duplicate recovery of attorney fees under this section.

(a.1)(1) At least thirty days prior to assessing or imposing attorney fees in connection with the collection of a delinquent account, including municipal claims, municipal liens ... a municipality shall, by United States certified mail, return receipt requested, postage prepaid, mail to the owner the notice required by this subsection.

\*　　\*　　\*

(Pa.Cmwlth.1997).

(c) A writ of execution may issue directly without prosecution to judgment of a writ of scire facias....

(d) Attorney fees may be imposed and collected in accordance with this section upon all ... municipal claims, municipal liens, writs of scire facias, judgments or executions filed on or after December 19, 1990.

(Emphasis added.) Dennis contends that the Borough submitted no evidence during the course of the trial that it had an ordinance in place or had passed any official declaration regarding the imposition of attorney fees relating to the collection of municipal claims in the period from before 1994 through the passage of Resolution 2007–12 on August 9, 2007.

In *Monroe Township Municipal Authority v. Augsburger*, 883 A.2d 718 (Pa. Cmwlth.2005), this court stated that subsection (a) of the Municipal Claims Act provides for attorney fees in the collection of a delinquent account. This court determined that, while "delinquent account" was not defined in the Municipal Claims Act, that the "failure to pay while asserting a reasonable contest ... to the validity of the lien does not render an account delinquent." *Id.* at 719. Further, this court looked at subsection (a.1) which requires that the municipality adopt by ordinance, or by resolution if the municipality is of a class which does not have the power to enact an ordinance, a schedule of attorney fees, and subsection (a.3) which requires that the municipality, at least thirty days prior to assessing attorney fees, notify the property owner by certified return receipt mail of its intent to do so. *Id.* at 719–720. This court stated that, "[a]bsent this evidence, the Authority could not impose the attorney's fees even if [this court] had deemed the account delinquent." *Id.* at 720.

Here, Dennis argues that the Borough did not adopt an ordinance and did not provide thirty days notice that it was going to impose such fees. Further, Dennis argues that the Borough's attempt to pass such a declaration over 13 years after the initial notices were allegedly sent to Dennis and after this litigation had commenced, is an affront to the clear intent of the statutory language to advise an owner in advance of filing a municipal lien that if the owner does not take the requested action, the owner may not only have to pay for the actual cost of the installation, but may have to pay additional charges including attorney fees.

However, the Borough met its burden of proof that it is entitled to collect attorney fees from Dennis. Specifically, 53 P.S. § 7187 provides that reasonable legal fees may be collected on a municipal lien after a verdict has been entered in favor of the municipality. In this case, a verdict was entered on June 5, 2009, in favor of the Borough and, as such, the Borough is entitled to reasonable attorney fees for collection on the debt.

Pursuant to 53 P.S. § 7187, once the trial court rules on a municipal lien and a verdict is entered by the court, the municipality shall be entitled to reasonable attorney fees pursuant to 53 P.S. § 7106. Reading both statutes in conjunction with one another, as required under the rules, once the trial court rules in favor of the municipality on its municipal lien, the challenge by the property owner is deemed to be meritless, therefore, entitling a municipality to an award of reasonable legal fees. As Dennis lost his challenge, 53 P.S. § 7187 mandates an award of reasonable attorney fees. The attorney fees of $1,183.62 as found by the trial court are reasonable and therefore, the Borough is entitled to such fees.

Dennis waived the issue of whether or not the Borough had an ordinance in place or had passed any official declaration regarding imposition of attorney fees pursuant to 53 P.S. 7106(a)(i), as it was not contained in Dennis's statement of matters complained of on appeal.[5]

Dennis also waived the issues that he did not receive notice thirty days prior to the curb construction work informing him that he could be liable for the costs, including attorney fees, and that such notice did not comply with 53 P.S. § 7106(a)(3) and (a)(4), because they were not included in Dennis's 1925(b) statement of matters complained of on appeal. Further, Dennis never petitioned the trial court to challenge the reasonableness of the attorney fees as required by 53 P.S. § 7106(a.1) and therefore a review of this issue on appeal is waived. Finally, 53 P.S. § 7106(a)(3) and (a)(4) were added to the statute in 1996 and thus, do not apply to the notice sent in 1994.

Next, Dennis argues that the Borough failed to meet its burden of proof that it properly served notice upon the owners of the Property as a precondition to the filing of its municipal lien. Section 7 of the Municipal Claims Act, 53 P.S. § 7141, states in pertinent part as follows:

No claim shall be filed for curbing . . . unless the owner shall have neglected to do said work for such length of time as may be described by ordinance, after notice so to do, served upon him or his known agent or occupant of the property . . . and if there be no agent or occupant known by claimant, it may be posted on the most public part of the property.

Dennis contends that the Borough did not submit any evidence that Dennis had an agent or other occupant living at the Property or that the Borough served the above-stated required notice on any such person. Further, the Borough has not asserted that it posted the Property. Thus, the Borough must serve the owners of the Property which, Dennis claims, it did not.

The Secretary testified that the Borough sent out two precondition notices required by Section 7 of the Municipal Claims Act, 53 P.S. § 7141. The first letter sent March 4, 1994, was addressed to both Mr. and Mrs. Dennis at the Property address and was returned to the Borough office. Thereafter, on May 14, 1994, a second letter was allegedly sent via certified mail to Mr. and Mrs. Dennis at P.O. Box 119. A copy of the U.S. Postal return receipt card was attached as part of Exhibit B–7 and indicates what Dennis claims is an illegible signature by an alleged addressee on or about May 28, 1994. The Borough conceded that no separate letters were sent to each of the two record owners of the Property in 1994, i.e. Rosemary and Dennis.

Dennis states that even though Rosemary conveyed her interest in the Property to Dennis on May 1, 1990, and Dennis agreed to hold Rosemary harmless with regard to any expenses or liens associated with the Property, that such deed was not recorded until June 7, 2007, so the Borough's service was improper, as Rosemary did not know of the claim until being served by the Sheriff of Northampton County with the writ of *scire facias* in 2007. The Borough did, subsequently, dis-

---

5. Dennis's statement of matters complained of on appeal provides:

 c. Whether the trial court erred in ruling that Walnutport can charge attorney fees on a municipal claim that is in litigation and not delinquent ensuing a judgment hereof

the Pennsylvania Commonwealth Court has ruled to the contrary? {*Monroe Twp. Mun. Auth. v. Augsburger*, 883 A.2d 718, 2005 Pa. Commw. LEXIS 523 (Pa. Commw.Ct.2005)} . . . .

miss Rosemary from the action even though, Dennis alleges, she was still a record owner of the Property in 1994.

■ Dennis further alleges that the signature on the return receipt card was illegible and was not his. He denied ever receiving the correspondence dated May 14, 1994. Dennis testified that he was not in residence at the Property in May of 1994, and that he was working in New York City at the time, living near his work, and receiving personal mail at a mail box in New York. Failure to properly serve an individual with original notice of an action precludes jurisdiction in said matter. *Township of Lycoming v. Shannon*, 780 A.2d 835, 838 (Pa.Cmwlth.2001). If there is more than one owner, the claimant is required to serve all of the owners. *Borough of Towanda v. Brannaka*, 434 A.2d 889, 892 (Pa.Cmwlth.1981).

■■ *Scire facias* municipal claims are *in rem* proceedings as opposed to *in personam*. It is, therefore, the property that owes the debt and not the property owner. Individuals are party defendants in the sense that they are required to show cause why their land shall not be bound by the lien of the municipal claim. In this sense, a *scire facias* municipal claim may be brought against any person found in possession of the property as well as against any person who may have an interest in the property, as owner. See Sections 18, 12 & 17 of the Municipal Claims Act, 53 P.S. § 7186, § 7181 and § 7185. The Borough properly served notice upon the owners of the Property prior to filing the municipal lien.

■ The Borough's service was proper pursuant to 53 P.S. § 7141. Dennis was the sole occupant of the premises in 1994. The trial court determined that Dennis signed the return receipt green card and was served on or about May 28, 1994.

This service complies with 53 P.S. § 7141. The factual record establishes that Rosemary did not have to be served, as she was not an owner at the time. In 1990 Rosemary and Dennis divorced. Pursuant to the divorce Rosemary tendered a deed to the Property to Dennis. The Secretary testified that she sent three notices to Dennis, two of which were sent to P.O. Box 119 and one of which she received a signed certified return receipt card back from the post office. The Secretary did verify with the post office that the P.O. Box 119 address was registered to Dennis. Dennis testified that P.O. Box 119 was in his name only and no one else had access to the box. Dennis did deny that the signature on the return receipt was his. However, the trial court found this statement not credible.

■ Next, Dennis contends that the trial court abused its discretion and/or committed an error of law in determining that Dennis had failed to prove that the Property sustained damage as a result of the Borough's work in installing curbing abutting the Property. Dennis sets forth the trial court's statement that:

> We find no case law limiting the special damages defense to a scire facias action. To the contrary, we find case law instructing defendant to plead all defenses to the municipal lien in the affidavit of defense 53 P.S. § 7271. *See Western Clinton v. Estate of Rosamilia*, 828 [826] A.2d 52, 55 (Pa.Cmwlth.2003).

Dennis's Brief at 17. Dennis presented his own testimony and photographs regarding the Property as it existed before and after the Borough's work on the abutting cartway and curbing, and also the expert testimony of Ronca. Ronca stated that abutting construction work created consequential problems to the adjoining property, particularly creating driveway

access problems after installing the curbing.

Section 612 of the former Eminent Domain Code, Act of June 22, 1964, Special Sess., P.L. 84, *as amended, formerly* 26 P.S. § 1–612, repealed by Section 5 of the Act of May 4, 2006, P.L. 112. NOTE: Section 1 of the Act of May 4, 2006, No. 2006–34, enacted the consolidated Eminent Domain Code; the act was effective September 1, 2006, 26 Pa.C.S. § 714, recognizes the issue of consequential damages to property due to work by a municipality on its own abutting property. When access to property is interfered with, it creates a right to compensation by the land owner from the government. *See, Jackson Gear Co. v. Department of Transportation,* 657 A.2d 1370 (Pa.Cmwlth.1995). Dennis contends that he did prove his case for special damages by a preponderance of the evidence.

■■■■ The trial court did not abuse its discretion and/or commit an error of law in determining that Dennis had failed to prove that the Property sustained damage as a result of the Borough's work in installing curbing abutting the Property. Once a lienholder has issued a *scire facias* to a taxpayer under the Municipal Claims Act, the tax payer may file an affidavit of defense raising all defenses he may have to the municipal lien. In a *scire facias* proceeding to enforce a municipal claim, the defendant can set off against the claims the amount alleged to be due him or her because of damages sustained by reason of acts of the plaintiff's agents and employees. During the trial the Borough engineer and general contractor testified. The trial court ruled that Dennis failed to prove that the Property sustained damage as a result of the Borough's actions. Pur-

suant to the Borough Ordinance No. 80–4, Section II, Dennis was responsible for all grading on the Property. The record supports the trial court's findings. Kunkel, the Borough engineer, testified that the curb installation work did not damage Dennis' Property and that the current state of the Property was solely due to lack of maintenance by the property owner. It was further stated that Dennis never made a complaint to the Borough in 1994 after the road improvements were completed. The Borough also notes that the trial court reviewed numerous photographs of the Property from 1981 and 2009. The Borough states that it is clear that the Property has not been maintained in the last fifteen years and that Ronca's estimate regarding property damage was done eighteen days before the trial and he had not observed the Property in 1994.

■■■■ Further, Dennis argues that the trial court abused its discretion and/or committed an error of law in determining that Dennis could not present a valid counterclaim in eminent domain, or in the alternative, the trial court abused its discretion in not appointing a board of viewers as Dennis requested in his amended affidavit of defense. Dennis contends that the trial court refused to allow him to proceed with a cognizable counterclaim he had against the Borough in eminent domain, as the trial court believed the Borough had the authority to widen Lehigh Gap Street. Dennis agrees that the Borough had the authority to widen Lehigh Gap Street, but argues that such authority does not preclude a claim for consequential/special damages for work that the Borough did that affected the Property. Section 714 of the Eminent Domain Code, 26 Pa.C.S. § 714.[6]

---

6. 26 Pa.C.S. § 714 regarding consequential damages sets forth the following:

All condemnors, including the Commonwealth, shall be liable for damages to prop-

Moreover, Dennis contends that the trial court has subject matter jurisdiction in a claim for eminent domain and can try such a case *de novo*. 26 Pa.C.S. § 1103. Second, it is obvious that the trial court has personal jurisdiction over the parties because they are the same parties in both the eminent domain action and the case *sub judice*. As a matter of judicial economy, trying the counterclaim at the same time as the hearing on the municipal claim, both of which involve 'damages' arising out of the Borough taking and rebuilding Lehigh Gap Street, makes logical sense.

In the alternative, Dennis argues that the trial court had an option to appoint a board of viewers as requested by Dennis in his amended affidavit of defense. The trial court took no action on this request even though the Borough filed no objections to said request.

Dennis is concerned that he is compelled to bring his action or counterclaim for the Borough's taking of his real estate as a compulsory counterclaim or be forever barred via *res judicata* or collateral estoppel. *Del Turco v. Peoples Home Savings Association*, 329 Pa.Super. 258, 478 A.2d 456 (1984). Thus, the trial court should have permitted Dennis to counterclaim in eminent domain or to have stayed the present proceeding until a board of viewers could have held a hearing and made a finding.

 The trial court did not abuse its discretion and/or commit an error of law in determining that Dennis could not present a valid counterclaim in eminent domain, nor did the trial court abuse its discretion in not appointing a board of viewers. Dennis contends that he had a right to seek consequential damages as a counter-

erty abutting the area of an improvement resulting from change of grade of a road or highway, permanent interference with ac-

claim. The record reflects that Dennis was permitted to claim damages. Ronca testified to what he believed the damages were and the cause. The trial court permitted Dennis to submit a claim for $34,900.00. The trial court held that Dennis failed to prove the Property sustained damages as a result of any action by the Borough and denied the counterclaim. Dennis had a full and fair hearing on his damages claim.

Additionally, the trial court did not err in holding that Dennis's claim for eminent domain could not be litigated as part of the *scire facias* proceeding. Any claim for taking of property or for consequential damages resulting from damage to property abutting the area of a road improvement resulting from a change of grade or denial of access, must be brought before a board of view. We note that 26 Pa.C.S. § 502, entitled "Petition for Appointment of viewers" permits only a condemnor, condemnee or displaced person to file a petition requesting the appointment of viewers. Therefore, the trial court correctly declined to appoint a board of viewers in this matter. Even if this issue were properly raised, it is without merit.

 Further, Dennis argues that the Borough failed to meet its burden of proof that it is entitled to collect interest at the rate of 10% or in any amount. Section 9 of the Municipal Claims Act, 53 P.S. § 7143, states in pertinent part that:

> Interest *as determined by the municipality* at a *rate not to exceed ten per cent* per annum shall be collectible on all municipal claims from the date of the completion of the work after it is filed as a lien.... (Emphasis added).

cess or injury to surface support, whether or not any property is taken.

Section 9 states that the rate is not to exceed 10%, it does not state that the interest rate accrues at 10%. It further states that the interest rate is to be "determined" by the municipality. Therefore, in order to collect any interest, the Borough must adopt an interest rate at or below 10%.

In *Pentlong Corp. v. GLS Capital,* 780 A.2d 734, 746 (Pa.Cmwlth.2001), the interest rate was set by legislation enacted by the Commissioners authorizing the county to collect interest at a rate of 12 % which was in excess of the maximum authorized under the Municipal Claims Act. Thus, Dennis argues, the Borough, in the present controversy, has not similarly complied with the legal requirements authorizing it to collect interest on alleged delinquent accounts or municipal liens. *Pentlong* is distinguishable, however. There was no question raised therein that the county should have determined the interest rate under the flexible provisions of the Municipal Claims Act. The county was held to have properly determined a specific higher interest rate under the more generous provisions of The Second Class County Code, Act of July 28, 193, P.L. 723, *as amended,* 16 P.S. §§ 3101–6302, which controlled.

Borough argues that the record reflects the municipal lien was filed against the Property on October 13, 1994. The Borough assessed interest at a rate of 10% per annum per year. The total lien amount including the interest that the Borough was owed on the municipal lien was $9,074.74, of that amount $4,668.60 was interest. Backenstoe testified that the Borough adopted Ordinance No. 80–4 that permitted the Borough to seek costs to be imposed as provided for in "the Borough Code and/or any applicable law, statute and regulation." N.T. at 80–82. Ordinance No. 80–4 Section II(g) incorporated the Municipal Claims Act provision such

that the Borough may collect fees and costs as set forth in the Municipal Claims Act. Borough contends the Municipal Claims Act permits it to assess interest at 10% per annum and the Borough adopted such provision when the Municipal Claims Act was incorporated into Ordinance No. 80–4. The interest rate used by the Borough does not exceed the statutorily determined percentage per annum but complies with the Municipal Claims Act.

The Borough also argues that Section 9 of the Municipal Claims Act, 53 P.S. § 7143, does not require an ordinance setting the interest rate, but allows the Borough to assess an interest rate not to exceed 10% per annum. We agree in part. We agree that 53 P.S. § 7143 does allow the Borough to set the interest rate. However, it does not allow the Borough to set it in a manner that is vague and subject to change randomly, without notice and official action. In order to charge interest the Borough must provide uniformity, notice and consistency by enacting an ordinance or resolution implementing the authority given it generally by the Legislature in 53 P.S. § 7143, by establishing a specific interest rate. Otherwise, taxpayers must speculate on what interest rate the municipality will charge on such liens between 0.1% and 10%. Official action by a municipality is required to adopt an Ordinance or Resolution establishing a specific rate of interest as opposed to an Ordinance that merely incorporates a statute that authorizes a flexible maximum possible rate of interest. Unless the Borough establishes a specific rate of interest by Ordinance, there would be no assurance that a uniform rate of interest would be consistently charged to all taxpayers. While it may be naive to consider that a municipality would charge less than the maximum rate permitted by law, the Legislature did not make such an assumption

when it enacted 53 P.S. § 7143, setting only the maximum rate while giving each municipality the choice of determining the interest rate to charge. Therefore, we must reverse this part of the trial court's decision and disallow the collection of interest at the rate of 10% per annum, as the Borough did not determine the interest rate with specificity in a resolution or ordinance.

Accordingly, we must affirm the trial court on attorney fees, notice, property damage and the counterclaim. However, we must reverse the trial court regarding the charging of interest.

### ORDER

AND NOW, this 3rd day of December, 2010 the order of the Court of Common Pleas of Northampton County in the above-captioned matter is affirmed in part and reversed in part in accordance with the foregoing opinion.