**Mark A. REARICK, Appellant**

v.

**ELDERTON STATE BANK, Appellee.**

Superior Court of Pennsylvania.

Argued March 5, 2014.

Filed July 23, 2014.

Aurelius P. Robleto, Pittsburgh, for appellant.

Donna M. Doblick, Pittsburgh, for appellee.

BEFORE: SHOGAN, J., OLSON, J., and WECHT, J.

OPINION BY WECHT, J.:

Mark A. Rearick appeals the trial court's order sustaining the preliminary objections of Elderton State Bank ("ESB") on the basis of *res judicata,* arising from a prior judgment of foreclosure entered in favor of ESB and against Rearick. The trial court agreed with ESB that Rearick's claims in the instant action, in substance, constituted affirmative defenses or counterclaims relative to the foreclosure action. With one minor exception, we disagree. Consequently, we affirm the trial court's order in part, reverse in part, and remand for further proceedings.

The trial court's brief account of the facts as pleaded by Rearick sets the stage:

In or about 2006, Rearick executed a series of loan documents with ESB pursuant to which Rearick borrowed substantial funds to support a real estate development project known as the "Saltwork Project" in Elderton, Pennsylvania. Rearick ultimately borrowed approximately $1.2 million in funds from ESB, secured by several parcels of real property located in or around the Elderton area. Then, in 2009, Rearick executed additional loan documents pursuant

to which he and his company[,] MKR Rentals, Inc., [1] agreed to pay ESB the principal sum of $3,415,000, secured by the Saltwork Project and the several parcels of real property owned by Rearick.

After a series of re-negotiations and re-organizations of the debt agreements between Rearick and ESB, Rearick defaulted on the loans. He agreed to execute deeds in lieu of foreclosure for 10 parcels of property that secured the loans. The Saltwork Project ultimately was sold at auction on October 29, 2010. ESB then instituted a mortgage foreclosure action against Rearick in which it sought to foreclose on a property [2] that secured the Saltwork Project.[1] Rearick asserted several defenses to ESB's action, including one for estoppel based on ESB's alleged failure to use commercially reasonable measures to resell properties that previously had been conveyed by Rearick in lieu of foreclosure. Due in large part to Rearick's failure to respond to ESB's Motion for Summary Judgment in the foreclosure action, we granted summary judgment in ESB's favor on or about June 11, 2012. We further entered judgment against Rearick in the amount of $3,006,305.62, which represented the outstanding balance on the loan documents, together with any additional amounts authorized by the mortgage and note.

---

[1] *Elderton State Bank v. Mark A. Rearick and the United States of America,* No.2011–0984–Civil, Court of Common Pleas of Armstrong County, Pennsylvania.

Rearick filed his Complaint in the instant action on or about October 24, 2012. He brings claims against ESB for breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, alter ego, and negligence, all of which relate directly to ESB's handling of its Saltwork Project financing arrangements with Rearick. ESB filed the instant Preliminary Objections to Rearick's Complaint on or about December 13, 2012.

Trial Court Opinion ("T.C.O."), 5/9/2013, at 1–3.

While scrupulously accurate on the facts as far as it goes, this summary omits certain relevant details of Rearick's allegations: Rearick alleges that ESB first starved the Saltwork Project by inducing Rearick to expand the original scope of the project, only later to refuse to lend Rearick the funds necessary to complete the project. ESB later agreed to provide most of the necessary funds only after availing itself of a federal partial securitization program for the development, thus limiting its exposure to only ten percent of the total debt. It did so only after forcing Rearick to accept an investment from a third party cherry-picked by ESB, who allegedly had a substantial shareholder interest in ESB and wrested control of the project from Rearick at ESB's behest.

Ultimately, Rearick could not sustain his debt load, and he defaulted. ESB foreclosed on the Saltwork Project as well as the personal assets Rearick had used to secure the debt. Eventually, the Saltwork Project and Rearick's other properties were sold at auction. The investor whom ESB introduced to Rearick allegedly purchased the Saltwork Project at auction for a mere fraction of the development's actual

---

1. Hereinafter, we refer to Rearick and MKR Rentals, Inc., collectively as "Rearick."

2. The record is unclear as to whether the ten properties surrendered in lieu of foreclosure overlap with the property or properties that were subject to the foreclosure action. The distinction is immaterial to our disposition.

value. In sum, Rearick contends that ESB, with whom he had had a lengthy business relationship that was not confined to this development, forced Rearick to accept untenable obligations while shielding itself and the third-party investor from any material exposure. Indeed, Rearick maintains, ESB was made whole and the investor ended up with the Saltwork Project for a song, while Rearick forfeited numerous properties as well as his entire interest in the Saltwork Project.

The trial court granted ESB's preliminary objections on *res judicata* grounds, concluding that the substance of Rearick's claims all could, and therefore **should,** have been raised in the earlier foreclosure action. The court noted that *res judicata* will apply only when the two actions at issue share the following elements: (1) identity of the thing sued upon; (2) identity of the cause of action; (3) identity of the parties; and (4) identity of the capacity of the parties. *See* T.C.O. at 6 (citing *Dempsey v. Cessna Aircraft,* 439 Pa.Super. 172, 653 A.2d 679, 681 (1995)). Furthermore, the scope of *res judicata* "includes not only matters actually litigated but also all matters that should have been litigated" in the prior action. *Id.* (quoting *Carroll Twp. Auth. v. Mun. Auth. of the City of Monongahela,* 102 Pa.Cmwlth. 363, 518 A.2d 337, 340–41 (1986)); *see Hopewell Estates, Inc. v. Kent,* 435 Pa.Super. 471, 646 A.2d 1192, 1194 (1994). The trial court found that elements (3) and (4) undisputedly were satisfied. T.C.O. at 6.

With regard to the remaining elements of the *res judicata* test, the trial court noted that identity exists when "the primary rights asserted and wrongs alleged in both actions are the same." *Id.* at 7 (citing *Kelly v. Kelly,* 887 A.2d 788, 792 (Pa.Super.2005)). Thus, in assessing iden-

tity, the court may consider whether the factual allegations in both actions are the same, whether the same evidence is necessary to prove each action, and whether both actions seek compensation for the same damages. *Id.* (citing *Kelly,* 887 A.2d at 792). Moreover, "[a] party cannot escape the application of *res judicata* merely by adopting a different method of presenting his case or re-styling his action under a different heading." *Id.* (citing *Kelly,* 887 A.2d at 792). The trial court found that "all of Rearick's claims ... involve[d] the very same issues, subject matter, transactions, and alleged damages that were involved in the prior mortgage foreclosure action." *Id.*

> Rearick's claims in this action all center on the same relationship, the same loan documents, the same properties, and the same Saltwork Project that were involved in the prior foreclosure action. Although Rearick has re-styled his actions to include claims for breach of duties allegedly owed by ESB to Rearick outside the scope of the loan documents, we find that these claims are mere repetitions of the affirmative and legal defenses that Rearick could have, and *should have,* asserted in the first action.... Rearick's claims in this case also would seek the very same damages already awarded to ESB in the prior action: the value of the properties securing the Saltwork Project. Although Rearick does not specifically plead these damages, he necessarily is seeking recompense of the properties' value in this action, in one form or another.

*Id.* at 8–9 (emphasis in original). Because the trial court's disposition of this case was sufficient to sustain ESB's preliminary objections, the trial court did not address the balance of ESB's alternative objections.[3]

---

**3.** These unresolved objections included the

following demurrers: (1) Rearick's claim for

This appeal followed.[4]

Before this Court, Rearick raises the following issues:

1. Did the trial court err when it concluded that Mr. Rearick was required to bring the causes of action he asserts in this case as defenses to the mortgage foreclosure action that [ESB] had previously brought against Mr. Rearick?

2. Did the trial court err when it concluded that Mr. Rearick's claims in this action constitute affirmative defenses in [ESB's] prior foreclosure action and not permissible counterclaims and that Mr. Rearick's failure to assert those claims in the prior mortgage foreclosure case barred him from asserting them in this case?

3. Did the trial court err when it concluded that Mr. Rearick's claims are barred by the doctrine of *res judicata?*

Brief for Rearick at 2–3.

 Our review of a trial court order granting preliminary objections is governed by the following standard:

"Our standard of review of an order of the trial court overruling or granting preliminary objections is to determine whether the trial court committed an error of law. When considering the appropriateness of a ruling on preliminary objections, the appellate court must apply the same standard as the trial court." *De Lage Landen Fin'l Servs., Inc. v. Urban P'ship, LLC,* 903 A.2d 586, 589 (Pa.Super.2006).

"Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint." When considering preliminary objections, all material facts set forth in the challenged pleadings are admitted as true, as well as all inferences reasonably deducible therefrom. Preliminary objections which seek the dismissal of a cause of action should be sustained only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief. If any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the preliminary objections.

R.C.P. 1019(i). With the exception of this last preliminary objection, which we address *infra,* the trial court's decision not to consider these objections makes it inappropriate for us to address them in the first instance. *Cf. Whittington v. Episcopal Hosp.,* 768 A.2d 1144, 1156 (Pa.Super.2001) ("[U]nless and until the coverage issue is decided by a trial court it is not appropriate for our review."). As set forth, *infra,* the trial court may address these demurrers on remand.

breach of an implied duty of good faith and fair dealing failed because no such duty is inherent to a contract securing a debt, and Rearick failed to assert facts that would establish such a duty under the circumstances of this case; (2) Rearick's claim for breach of a fiduciary duty failed because a lender owes a debtor a fiduciary duty only if it takes effective control of the borrower's affairs, and Rearick did not allege that ESB asserted such control over the Saltwork Project; (3) Rearick's negligence claim failed because it was barred by the gist of the action doctrine; and (4) Rearick's alter ego claim failed because it is a claim typically designed to pierce the corporate veil, which was inapplicable to the instant case. Finally, ESB asserted a preliminary objection for failure to conform to Pa. R.C.P. 1028(a)(2) ("failure of pleading to conform to law or rule of court"), because Rearick failed to attach any of the relevant writings to the complaint, in violation of Pa.

4. On June 4, 2013, the trial court directed Rearick to file a concise statement of errors complained of on appeal pursuant to Pa. R.A.P. 1925(b). On June 24, 2013, Rearick timely complied. On July 3, 2013, the trial court filed a Rule 1925(a) statement adverting to its May 9, 2013 opinion in support of its order sustaining ESB's preliminary objections.

*Hykes v. Hughes,* 835 A.2d 382, 383 (Pa.Super.2003) (citations omitted).

*Haun v. Comm. Health Sys., Inc.,* 14 A.3d 120, 123 (Pa.Super.2011) (citations modified).

It is not practical to address Rearick's issues separately, as stated. Indeed, we are confronted in this case with the interplay of three distinct legal principles or doctrines that may apply to determine the permissibility of affirmative defenses and counterclaims to an action in foreclosure: *Res judicata,* which precludes the filing of a separate action raising defenses and claims that could have been raised in the context of a prior foreclosure action; Rule of Civil Procedure 1148, which precludes counterclaims in foreclosure that do not "arise[ ] from the same transaction or occurrence or series of transactions or occurrences from which the plaintiff's cause of action [*i.e.,* the execution of the note and mortgage] arose"; and the Restatement (Second) of Judgments § 22, which determines when permissive counterclaims in one action may be raised in a separate action. We address these considerations in turn.

 Because the trial court based its ruling upon *res judicata,* we address that issue first.

> *Res judicata,* which is also known as claim preclusion, holds that a final judgment on the merits by a court of competent jurisdiction will bar any future action on the same cause of action between the parties and their privies. *McArdle v. Tronetti,* 426 Pa.Super. 607, 627 A.2d 1219, 1222 (1993). The doctrine has application where the following are present: (1) identity of the thing sued upon or for; (2) identity of the cause of action; (3) identity of persons or parties to the actions; and (4) identity of the quality or capacity of the parties suing or sued. *See id.* at 1222; *Martin v. Poole* [232

Pa.Super. 263], 336 A.2d [363], 366 [ (Pa.Super.1975) ]. "[A]ll matters which might have been raised and decided in the former suit, as well as those which were actually raised therein, are *res* [ ]*judicata* in a subsequent proceeding between the same parties and their privies." *Nevling v. Commercial Credit Co.,* 156 Pa.Super. 31, 39 A.2d 266, 267 (1944); *see also McArdle,* 627 A.2d at 1222. . . .

> In determining whether *res judicata* should apply, a court may consider whether the factual allegations of both actions are the same, whether the same evidence is necessary to prove each action and whether both actions seek compensation for the same damages. *Mintz v. Carlton House Partners, Ltd.,* 407 Pa.Super. 464, 595 A.2d 1240, 1246 (1991). "The thing [that] the court [should] consider is whether the ultimate and controlling issues have been decided in a prior proceeding in which the present parties actually had an opportunity to appear and assert their rights." *Stevenson v. Silverman,* 417 Pa. 187, 208 A.2d 786, 788 (1965) (emphasis omitted) (quoting *Hochman v. Mortgage Fin Corp.,* 289 Pa. 260, 137 A. 252, 253 (1927)). Although based upon facts in common with an earlier action, *res judicata* will not bar a subsequent action where the damages for which relief was sought in the earlier action were entirely different. *Pontiere v. James Dinert, Inc.,* 426 Pa.Super. 576, 627 A.2d 1204, 1210 (1993); *Melat v. Melat,* 411 Pa.Super. 647, 602 A.2d 380, 383 (1992). Indeed, two suits [that] have arisen out of the same set of factual circumstances may involve entirely separate causes of action. *McArdle,* 627 A.2d at 1222; *Martin,* 336 A.2d at 366.

*Hopewell Estates,* 646 A.2d at 1194–95 (citations modified).

The trial court relied primarily upon *Del Turco v. Peoples Home Savings Ass'n*, 329 Pa.Super. 258, 478 A.2d 456 (1984), in finding that *res judicata* barred Rearick's claims in the instant matter. T.C.O. at 9–11. *Del Turco* provides only weak support for the court's ruling, however, because we did not decide that case based upon *res judicata*.

In *Del Turco*, the appellants obtained a mortgage and note from the appellee ("the bank") to finance the construction of an office building. When the appellants defaulted on the loan, the bank filed a foreclosure action. The appellants did not appear to defend themselves, and a judgment was entered against them, followed by a writ of execution against the subject property. *Id.* at 458.

Thereafter, the appellants filed an action against the bank. They alleged that the bank had failed to pay certain available funds to contractors on the job, despite promising to do so, and then failed to credit the moneys in question against the outstanding balance on the note. The appellants further contended that the bank had failed fully to credit the loan account with rentals received on the property. They also alleged that the mortgage called for unconscionable attorneys' fees. Finally, they alleged that the bank improperly refused to release a lien on one of the multiple buildings erected on the property when the appellants identified a *bona-fide* purchaser for that property, forfeiting an opportunity to improve the appellants' standing without injury to the bank. The trial court dismissed the first three counts based upon *res judicata* and the fourth for reasons that are immaterial to this case. *Id.* at 458–60.

This Court affirmed. We began by addressing the arguments of the parties regarding the application of *res judicata*. After reviewing the factors that govern the preclusion of claims as *res judicata*, we observed that "it [was] not easily discernible whether the two actions constitute[d] a single cause of action or two distinct causes of action arising out of a single transaction." *Id.* at 461. Addressing *Martin, supra*, the case pressed by the appellants as militating against the application of *res judicata*, we discerned "tension between *res judicata* theory and permissive counterclaim pleading practice in Pennsylvania," and emphasized that the tension is particularly apparent when "a defendant in the first action, who was the plaintiff in the subsequent suit, fails to interpose a permissive counterclaim in the first action." *Id.* at 462.

We proceeded to analyze *Martin* through the lens of *res judicata*, as we were invited to do by the appellants, and we observed that we could distinguish *Martin* from the case before us "if we should find, as did the lower court, the requisite identity of [the] cause[s] of action presented." *Id.* at 463. "In a fundamental way," we continued, "the subject matter, issues, facts and evidence in the instant suit [were] so inextricably interwoven with [those] of the first suit that further judicial consideration would be the relitigation of the same controversy." *Id.* However, and importantly, we declined to analyze the case under *res judicata*, opting instead to treat the claims raised by the appellants as permissive counterclaims. In so approaching the case, we implied that the claims in question were not patently barred by *res judicata*.

Whether permissive counterclaims may be raised in a subsequent action is governed by the Restatement (Second) of Judgments § 22, which provides as follows:

(1) Where the defendant may interpose a claim as a counterclaim but he fails to do so, he is not thereby precluded from

subsequently maintaining an action on that claim, except as stated in Subsection (2).

(2) A defendant who may interpose a claim as a counterclaim in an action but fails to do so is precluded, after the rendition of judgment in that action, from maintaining an action on the claim if:

(a) The counterclaim is required to be interposed by a compulsory counterclaim statute or rule of court, or

(b) The relationship between the counterclaim and the plaintiff's claim is such that successful prosecution of the second action would nullify the initial judgment or would impair rights established in the initial action.

Restatement (Second) of Judgments § 22.

Relying upon subsection 22(2)(b), we observed that the appellants' first three counts "present a restitutionary theory of recovery that, in essence, challenges the amount of debt paid [the bank] pursuant to [the] judgment in the mortgage foreclosure action." *Del Turco*, 478 A.2d at 463. Thus, were the appellants to prevail, in effect they would "impair rights established in the initial action" in violation of subsection 22(2)(b) by receiving damages that could have been alleged as a set-off against the balance of the loan that was the subject of the earlier foreclosure action. *Id.* Accordingly, we affirmed the trial court, but did so based upon the Restatement of Judgments, not *res judicata.*

Like the trial court and ESB, Rearick spends a great deal of his argument focusing on *res judicata.* This is understandable in light of the trial court's reliance on that doctrine as its basis for decision. In short, Rearick argues that his claims against ESB cannot be barred by *res judicata* because, under Pennsylvania Rule of Civil Procedure 1148, he could not have raised those claims as affirmative defenses or as counterclaims in the context of the foreclosure action. Brief for Rearick at 7. Rule 1148 provides that a foreclosure defendant "may plead a counterclaim which arises from the same transaction or occurrence or series of transactions or occurrences from which the plaintiff's cause of action arose." Rearick argues that, under *Chrysler First Business Credit Corp. v. Gourniak*, 411 Pa.Super. 259, 601 A.2d 338 (1992), and *Overly v. Kass*, 382 Pa.Super. 108, 554 A.2d 970 (1989), the claims that he presented in the instant matter could not have been raised in the earlier foreclosure action, and therefore lacked the identity of claims with the earlier foreclosure action necessary to incur the *res judicata* bar.

In *Overly*, the mortgagors entered into a purchase agreement with certain sellers (the "mortgagees") who also took a note and purchase money mortgage from the mortgagors. The mortgagors defaulted on their obligations, and the mortgagees commenced a foreclosure action. The mortgagors asserted a counterclaim seeking set-offs against the debt as a consequence of the mortgagees' various alleged misrepresentations about the property. Upon the mortgagees' motion for summary judgment, the court, deeming the counterclaims impermissible under Rule 1148, severed those counterclaims from the foreclosure action. *See* 554 A.2d at 972.

This Court affirmed, explaining as follows:

In Goodrich–Amram it is said:

[Rule 1148] restricts every defendant to claims [that] arise from the same transaction or occurrence from which the plaintiff's cause of action arose.... No defendant may now set off a claim against the plaintiff simply because its nature is contractual or

quasicontractual, as allowed in assumpsit actions.

The claim must now arise, in some manner, from the mortgage relationship. A counterclaim could be filed, for example, for damages for breach of warrant of title to the mortgaged premises. [*Cf. Wacker v. Straub,* 88 Pa. 32 (1879).] . . .

3 Goodrich–Amram 2d § 1148:1 at 488. *Overly,* 554 A.2d at 973 (quoting *Warden v. Zanella,* 283 Pa.Super. 137, 423 A.2d 1026, 1029–30 (1980)) (bracketed modifications in *Overly;* citation modified).

 This Court has limited the scope of counterclaims in a foreclosure action for the following reason:

Pennsylvania Rules of Civil Procedure 1141–50 govern actions for mortgage foreclosure. Rule 1141(a) provides that an action at law to foreclose a mortgage upon any estate, leasehold or interest in land shall not include an action to enforce a personal liability. It is well-established that an action in mortgage foreclosure is strictly *in rem* and thus may not include an *in personam* action to enforce personal liability. *Insilco Corp. v. Rayburn,* 374 Pa.Super. 362, 543 A.2d 120, 123 (1988); *Signal Consumer Discount Co. v. Babuscio,* 257 Pa.Super. 101, 390 A.2d 266, 270 (1978). This restriction is equally applicable to a mortgagee and a mortgagor. *Id.*

*Newtown Village P'ship v. Kimmel,* 424 Pa.Super. 53, 621 A.2d 1036, 1037 (1993) (italics added; citations modified); *see N.Y. Guardian Mortgage Corp. v. Dietzel,* 362 Pa.Super. 426, 524 A.2d 951, 953 (1987) (citing *Meco Realty Co. v. Burns,* 414 Pa. 495, 200 A.2d 869 (1964)) ("An action in mortgage foreclosure is strictly an *in rem* proceeding, and the purpose of a judgment in mortgage foreclosure is solely to effect a judicial sale of the mortgaged property."). Thus, in Pennsylvania, the scope of a foreclosure action is limited to the subject of the foreclosure, *i.e.,* disposition of property subject to any affirmative defenses to foreclosure or counterclaims arising from the execution of the instrument(s) memorializing the debt and the security interest in the mortgaged property. With these principles in mind, we return to the cases relied upon by Rearick.

At issue in *Overly* were alleged oral representations made by the mortgagees in tandem with the original purchase. We rejected the mortgagors' arguments that their claims were the appropriate subject of a set-off:

These alleged representations concern the agreement of sale . . . and [were] not part of, or incident to, the creation of the mortgage.

The mortgage is an interest in the mortgaged property created by a written agreement providing security for the payment of a debt or an obligation. None of the facts alleged by the [mortgagors] deals even remotely with the creation of that security interest; rather, they deal with the agreement between the buyers [*i.e.,* mortgagers] and the sellers [*i.e.,* mortgagees] of the property. Accordingly, the [mortgagors'] counterclaim does not arise as part of, or incident to, the creation of the mortgage.

554 A.2d at 973–74. Thus, we held that the trial court did not err in severing the mortgagors' counterclaims.

In *Chrysler,* as in *Overly,* at issue was a mortgage relationship and a buyer-seller relationship that arose between the same two parties. In a counterclaim, the buyers contended that they had agreed with the seller to purchase the property based upon representations that the seller would finance certain renovations that would enable the buyers to run a business on the property. However, the seller failed to

furnish the financing. The buyers asserted counterclaims for fraudulent misrepresentation, unjust enrichment, and punitive damages. The trial court sustained the seller's preliminary objections and severed the buyers' counterclaims because it found that, under Rule 1148, the claims "did not arise out of the mortgage transaction." *See* 601 A.2d at 339–40. We affirmed. Relying upon *Overly*, we noted that "the alleged promises of future financing for rehabilitation of the property and for operation of [the buyers'] business [were] not part of or incident to the creation of the security interest. Instead, they pertain[ed] to the agreement of sale ... made prior to the mortgage." *Id.* at 341–42.

Rearick maintains that, for the same reasons, his instant claims could not have been raised in the foreclosure action:

Mr. Rearick's claims against [ESB] do not arise out of the creation of a mortgage from Mr. Rearick to [ESB]; rather, they arise out of [ESB's] conduct in policing the loan and developing an exit strategy under which it insulated itself but did that by turning Mr. Rearick ultimately out in the wintery cold.

Nothing in Mr. Rearick's Complaint at issue here addresses the creation of a security interest in his residence and none of his causes of action arise as part of, or incident to, the creation of a mortgage. Mr. Rearick's lender liability complaint is concerned with [ESB's] improper conduct in policing a loan (e.g., its dominance and control over Mr. Rearick's business affairs, it[s] unfairly reducing its own risk while increasing Mr. Rearick's risk[,] and its insertion of its own agent ... into Mr. Rearick's business who[m] it fully protected and who eventually acquired the Saltwork Project at a deep discount).... In short, none of Mr. Rearick's causes of action

concerns the creation of a security interest in his residence.

Brief for Rearick at 8. However, for the reasons that follow, we find it unnecessary to assess whether *Chrysler* and *Overly* precluded Rearick from raising the instant claims in the earlier foreclosure action.

Rearick argues in the alternative, and more persuasively, that his claims in this matter were permissive counterclaims in the foreclosure action, and, as such, could be raised in a subsequent action, notwithstanding that they could also be raised in the foreclosure action. He cites *Del Turco* for the proposition that the instant claims were, at most, permissive counterclaims that were not barred by the limitations set forth in the Restatement (Second) of Judgments § 22. Brief for Rearick at 11–13.

As we did in *Del Turco*, we believe that Rearick's claims are best addressed as permissive counterclaims, subject to the attendant limitations on such claims. In *Del Turco* we demurred on the application of *res judicata*, despite the fact that the claims raised in the second action in that case patently sought relief for matters that could have been raised in the earlier foreclosure action. We held, at least provisionally, that the requisite identity of claims necessary to trigger the *res judicata* bar was lacking. We believe that the same is true in this case. Our reasons for so concluding are manifest on the face of Rearick's complaint.

■ First, Rearick pleads that ESB breached an allegedly implied covenant of good faith and fair dealing associated with the mortgage and note. His substantive allegations are as follows:

26. ESB breached the implied covenant of good faith and fair dealing by:

a. Encouraging Rearick to expand the Saltwork Project on the mistaken

belief that ESB would fund the development through completion;

b. Arbitrarily refusing [to] fund completion of the Saltwork Project even though Rearick increased the square footage of the project with ESB's knowledge and approval and even though ESB knew that Rearick believed that ESB would fund the construction through its completion;

c. Selecting as an "investor" for the Saltwork Project an individual with significant business relationships with ESB and taking steps to ensure that that individual's "investment" in the Saltwork Project would be repaid in full to the direct detriment of Rearick;

d. Requiring Rearick to "partner" with an "investor" selected by ESB whom, as ESB's agent, took complete control of the Saltwork Project and made construction and business decisions that were intended to benefit solely ESB and the investor's financial stake in ESB;

e. Requiring Rearick to increase the amount he borrowed on the Saltwork Project so that he could repay the "investor" that ESB forced upon him;

f. Intentionally burdening the Saltwork Project with excessive debt and then refusing to work with Rearick to restructure the loan in a manner that made sense in light of the economic realities of the time and the geographic area; and

[g.] Compelling Rearick to execute deeds in lieu of foreclosure and then liquidating that real estate collateral in a commercially unreasonable matter.

Complaint at 8–9.

In support of his second count, alleging ESB's breach of fiduciary duty, Rearick asserted that ESB's investor acted as the bank's "proxy," effectively extending ESB's involvement "beyond the traditional lender/borrower relationships to form a confidential relationship giving rise to a fiduciary duty." *Id.* at 9 ¶ 29. Moreover, the alleged control exercised by ESB's "proxy," *i.e.*, the investor, which extended to construction decisions and tenant selection, burdened ESB with a "duty of loyalty." *Id.* at 9 ¶ 30. In support of his third count, "alter ego," Rearick essentially repeated and expanded upon his allegations that ESB took *de facto* control, through its investor, of the Saltwork Project: "Since ESB dominated and controlled Rearick and his business, it must be held to account for the consequences of its governance." Complaint at 10 ¶ 36.

Finally, Rearick raised a claim for negligence. Characterizing it as an "alternative" claim, Rearick alleged that "ESB owed Rearick a duty of care as a result of its unsolicited direction to Rearick that he contact investors to provide incremental funding for the Saltwork Project." ESB "became directly involved in brokering the transaction between Rearick and its investor," and "did nothing to vet the potential investor and, worse, colluded with [the investor] to place Rearick at a disadvantage." *Id.* at 11 ¶¶ 39–44.

In *Del Turco*, eschewing the trial court's application of *res judicata*, we affirmed the trial court's order sustaining preliminary objections because to do otherwise would run afoul of the Restatement of Judgments bar against subsequent actions that "would nullify the initial judgment or would impair rights established in the initial action." Restatement (Second) of Judgments § 22(2)(b). The second action in that case unequivocally challenged the loan balance that underlay the judgment entered in the prior foreclosure action. Had the plaintiff obtained a favorable verdict in the second action, it effectively would have attacked the foreclosure judgment. The same is

not true in this case, notwithstanding the learned trial court's contrary conclusion.

Neither in word nor in substance do Rearick's claims in the instant action call into question the legal effect of the earlier foreclosure action. They do not contest the foreclosures as such, nor do they directly contest the debt itself, as did the claims in *Del Turco*. Rather, Rearick seeks damages from ESB for alleged misconduct and breaches of implied terms of the parties' contract(s) and/or other non-contractual obligations, primarily for actions that occurred after the creditor-debtor relationship already had been established. It is true that, as an elementary matter, were Rearick to secure a damage award against ESB, that would have the constructive effect of reducing his net obligation to ESB. However, that would be true in **any** subsequent suit between the parties, whether related to the transaction at issue or arising from an entirely different circumstance. The mere existence of offsetting judgment debts does not necessarily undermine the earlier judgment. Moreover, the trial court's assumption that the damages sought by Rearick necessarily would be measured by the values of the foreclosed properties and other matters that were the subject of the foreclosure proceeding, *see* T.C.O. at 8–9, is neither alleged in, nor implied by, the complaint. It is premature on this record to make assumptions regarding the ways any compensatory or other damages might be asserted or measured, should this case proceed to a verdict. *Cf. In re Soto*, 221 B.R. 343 (Bankr.E.D.Pa.1998) (finding that the consumer protection claims raised in a separate action following foreclosure sought "affirmative relief in the form of a judgment," which would not " 'nullify or substantially impair' any rights or interests established" by the earlier judgment). This creates ample doubt that ESB's preliminary objections should have been sustained. Consequently, we must reverse the trial court's order sustaining ESB's preliminary objection on the basis of *res judicata*.

Our ruling comes with one limited caveat: Rearick may not seek damages for ESB's allegedly commercially unreasonable method of liquidating the properties surrendered by Rearick in foreclosure. First, that claim was litigated and disposed of in the prior action. *See* T.C.O. at 2. Moreover, were Rearick to secure damages specifically on that matter, it would undermine the foreclosure judgment: implicit in that judgment was the trial court's blessing of all matters pertaining to the foreclosure, including ESB's disposition of the properties at issue. Consequently, to permit Rearick to litigate that claim in the instant matter would violate subsection 22(2)(b)'s bar against claims that could undermine a prior judgment.

In reversing the trial court's order, we intend no prejudice to ESB's other preliminary objections, the merits of which we will not consider at this time. The trial court's ruling on *res judicata* effectively mooted those demurrers. Therefore, we do not have the benefit of the trial court's analysis. Although ESB correctly notes that we may affirm a trial court's order on any basis, *see Rambo v. Greene*, 906 A.2d 1232, 1235 n. 4 (Pa.Super.2006), and dedicates well over half of its argument to setting forth alternative reasons upon which we might affirm the trial court's ruling, *see* Brief for ESB at 28–49, those alternative arguments are best resolved by the trial court in the first instance. *Cf. Whittington v. Episcopal Hosp.*, 768 A.2d 1144, 1156 (Pa.Super.2001) ("[U]nless and until the coverage issue is decided by a trial court it is not appropriate for our review.").

Thus, on remand, the trial court may choose either of two courses. First, the trial court may address and rule upon the remainder of ESB's preliminary objections immediately, and proceed however the court's disposition of those objections necessitates. Alternatively, the court may grant Rearick the opportunity to amend his complaint. Should the court opt to follow the latter course, ESB shall be free to file new preliminary objections, including those raised in its first preliminary objections, with the exception of any objections that depend on the theory of *res judicata* that we have rejected in this opinion.

Order affirmed in part and reversed in part. Case remanded.

Jurisdiction relinquished.

OLSON, J., concurs in the result.