J-A35017-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

E. DALE KUNKLE, AND HELEN KUNKLE,

        Appellee

        v.

ROBERT G. POYDENCE,

        Appellant

        v.

CARL M. VINCE,

        Appellee

IN THE SUPERIOR COURT OF
PENNSYLVANIA

No. 157 WDA 2014

Appeal from the Order entered December 26, 2013,
in the Court of Common Pleas of Westmoreland County,
Civil Division, at No(s): 8870 of 1995

BEFORE:  BENDER, P.J.E., BOWES, and ALLEN, JJ.

MEMORANDUM BY ALLEN, J.:        **FILED DECEMBER 11, 2014**

Robert G. Poydence, ("Appellant"), appeals from the trial court's order dismissing his emergency petition for special relief and/or to enforce judgment against neighboring property owners, E. Dale and Helen Kunkle, husband and wife, ("the Kunkles"), and Carl M. Vince ("Vince").  After careful review of the record, we decline to reach Appellant's issues pursuant to the doctrines of *res judicata* and collateral estoppel, thereby affirming the trial court's order.  We also deny as moot the Kunkles' motion to quash.

The following excerpts from various court opinions issued throughout this action's long procedural history provide relevant background to our

disposition. We begin with our recitation of facts from our August 20, 1991 unpublished memorandum disposing of Appellant's prior appeal regarding the disputed property.

> Ralph C. Miller owned a tract of land which he later divided and sold, reserving a large portion for himself. Miller originally conveyed the portion of the land now known as the Ralph Miller Plan of Lots (Miller Subdivision) to William Pehna. This property was subsequently reconveyed to Miller after the deaths of Pehna and Pehna's wife. In 1980[,] Miller divided the land that had been reconveyed to him into five subdivisions. The Miller Subdivision, as divided by Miller in 1980 was recorded in the office of the Recorder of Deeds of Westmoreland County, Volume 87, page 169. Lot 1 was the largest lot, bounded on the east by the western boundary lines of Lots 2-5.

> Miller subsequently sold the lots in the Miller Subdivision to several parties. In 1981[,] Miller conveyed Lots 4 and 5 to … Carl and Nancy Vince. In March of 1983[,] Miller conveyed Lot 2 to Gary Hopkinson[,] who later conveyed the property to … [the Kunkles]. Miller conveyed Lot 1 to … [Appellant] on February 1, 1985. Finally, Miller conveyed lot 3 to Charles Vernosky on September 18, 1985. Lot 3 was subsequently conveyed to the Vinces and thus the Vinces owned Lots 3-5 at the time of trial. N.T., July 17, 1990 at 7. The Vinces and the Kunkles will hereinafter be collectively referred to as the grantees.

> In 1985[,] [Appellant] hired James R. Deglau to survey the Miller Subdivision because [Appellant] felt that there was a problem with the boundary line separating his land from the land of the grantees. [Appellant] later hired Gregory C. Parker to survey the Miller Subdivision and establish the boundaries of [Appellant's] property. N.T. July 17, 1990 at 51. Parker determined that Lot 1 was 6.58 acres instead of 5.835 acres, as described in the original Agreement of Sale and the original recorded Miller Subdivision plan. N.T. July 17, 1990 at 92-93.

> As a basis for this conclusion, Parker reviewed the survey he prepared, other surveys and deeds. While preparing his survey[,] Parker also prepared a legal description of Lot 1 using monuments and metes and bounds. See Exhibit H.

Upon reviewing the results of Parker's survey, [Appellant] filed a complaint [at docket 4980 of 1989 in the Court of Common Pleas of Westmoreland County] against Miller and the grantees in which he essentially requested reformation of his deed. In the alternative[,] [Appellant] requested that title be quieted in his favor. The grantees filed individual counterclaims. A bench trial was held on July 17, 1990[,] after which a non-jury verdict was entered for the grantees on [Appellant's] claims. In addition[,] the court ruled in favor of [Appellant] regarding the grantees' counterclaims [seeking to reform the deed or alternatively to quiet title in their favor]. [Appellant] filed post-trial motions which were denied.

***Poydence v. Miller, Kunkle, et al.,*** 599 A.2d 798 (Pa. Super. 1991)

(unpublished memorandum) at 1-3.

In affirming the trial court's denial of Appellant's request to reform Appellant's deed or quiet title in his favor, we cited with approval the following excerpt from the trial court's opinion:

As adduced at trial and set forth in defendant's Statement of the Case, [Appellant] bargained for, entered into an Agreement of Sale for, and was conveyed by deed Lot No. 1 in the Ralph Miller Plan of Lots consisting of at least 5.835 acres as identified by the metes and bounds shown on the recorded survey [the subdivision plan]. After the conveyance, [Appellant] became convinced that there had been some mistake, and he was in fact entitled to more than Lot No. 1 as shown on the Ralph C. Miller Plan of Lots survey [the subdivision plan], containing 5.835 acres. [Appellant] had the burden of proving his entitlement to more, and the trial court found that he had not carried his burden of proving that he was entitled to more than Lot No. 1 as described on the Plan, for which he had bargained.

The cases cited by [Appellant] in the first section of his brief refer to cases where there was a mistake in the boundary description. In our case, [Appellant] failed to carry his burden of proving that there is a mistake in the description of his property.

[T]he trial court ruling was that [Appellant] failed to prove anything except that there was more ground in the Ralph Miller

- 3 -

Plan of Lots than was originally anticipated. [Appellant] did not prove that he was entitled to that excess ground. It was not simply that the acreage prevailed. Even if you go by the metes and bounds as contained in the Plan of Lots ... [Appellant] obtained the metes and bounds as contained in that Plan.

*Id.* at 6.

We additionally emphasized the following statements made by the trial court during the trial:

At trial[,] the trial court stated:

[N]ow when a man agrees to buy Lot 1, and a man agrees to buy Lots 2, 3, 4, and 5 as described, they get what they bargained for, but they don't get a gift of Mr. Miller's ground, just because everybody's mad because there's some excess ground sitting around.

...

You asked for 5.835 acres and you got it. If I'm going to ask this man, in the final analysis, okay, you take the metes and bounds and whatever's there, did he get his 5.384 [sic] or whatever, acres, yes. If he got his 5.384 [sic] acres, why is he entitled to more? That's what he bargained for.

N.T. July 17, 1990 at 81-84. Thus, we conclude that there is sufficient evidence in the record to support the trial court's findings that [Appellant] received the correct amount of land for which he bargained when he purchased Lot 1 from Miller. The trial court did not abuse its discretion when it determined that Miller intended to grant [Appellant] 5.835 acres of land.

*Id*. at 8.

Subsequently, on November 2, 1995, the Kunkles filed a quiet title action against Appellant in the Court of Common Pleas of Westmoreland County at docket 8870 of 1995. On June 7, 1996, Appellant filed an answer, new matter, and counterclaims to the Kunkles' quiet title action. Appellant's

- 4 -

counterclaims included an action to quiet title, an action in ejectment, a request for injunctive relief, and an action in trespass. During the pendency of this action, the trial court granted the Kunkles' motion for partial judgment on the pleadings, denied Appellant's motion for judgment on the pleadings, and dismissed Appellant's counterclaims based on *res judicata* and collateral estoppel, and explained:

> This case was initiated by the filing of [the Kunkles'] Complaint in Action to Quiet Title seeking to declare [the Kunkles] owners of a 0.691 acre strip of land adjoining the property of [Appellant].
>
> [Appellant] then filed an Answer, New Matter and Counterclaim, with the Counterclaim including an action to quiet title, action in ejectment, a request for injunctive relief, and a count in trespass. [The Kunkles] then filed a Reply to [Appellant's] New Matter and Counterclaim and also asserting res judicata and collateral estoppel as New Matter based upon an action previously filed before this Court by [Appellant], the defendant in this case, at No. 4980 of 1989, in which case this Court found against [Appellant]. That decision was affirmed by the Superior Court of Pennsylvania at No. 159 Pittsburgh 1991, and a Petition for Allowance of Appeal to the Supreme Court was denied. That Complaint included a count in equity for reformation of a deed, a request for injunctive relief, and an action to quiet title. The defendants in that case also filed Counterclaims seeking quiet title.
>
> [Appellant], plaintiff in that case, presented his testimony and the testimony of a surveyor attempting to prove that he was entitled to the property at issue in the case now before this Court. This Court held that [Appellant], plaintiff in that case, had failed to prove a case, and subsequently denied the post-trial motions of [Appellant]. The basis of this Court's opinion was that [Appellant] bargained for, entered into an Agreement of Sale for, and was conveyed by deed Lot No. 1 in the Ralph Miller Plan of Lots consisting of 5.835 acres and he was entitled to no more. None of the defendants, including [the Kunkles],

presented any evidence or actually tried their case before this Court, but simply rested at the conclusion of [Appellant's] case.

After the conclusion of appellate review of the action at No. 4980 of 1989, the original grantors of the subdivision, Ralph C. Miller and Shelly A. Miller, deeded to the Kunkles the property set forth in Paragraph 3 of [the Kunkles'] Complaint in this case. The plaintiffs in this case, [the Kunkles], then initiated the action at this number and term.

Both [the Kunkles] and [Appellant] have filed Motions for Summary Judgment, each claiming the other's claim is barred by res judicata and collateral estoppel through those matters litigated at No. 4980 of 1989.

\*\*\*

In this case, [Appellant] is attempting again to assert a claim to property which this Court and the Superior Court have already determined in the previous action at No. 4980 of 1989 that he did not bargain for, did not purchase, and does not own. [Appellant] owns the same property that he owned at the filing and determination of the aforesaid case. After the conclusion of that case, [the Kunkles], on December 17, 1991, purchased from Ralph C. Miller and Shelly A. Miller, his wife, the property set forth in Paragraph 3 of [the Kunkles'] Complaint in this case.

[Appellant] attempts to distinguish the cases by saying that he now only seeks Lot No. 1 of the Ralph Miller Plan of Lots to the boundaries of Lot Nos. 2 through 5 on the east and allegedly bounded by the "monuments" of State Route 819 and Township Road. No. 783 ([Appellant's] Reply to New Matter, Paragraph 39). However, the calls he sets forth in the aforesaid paragraph differ from those on the recorded Plan, and this Court has already rejected [Appellant's] contention that there is any error in his survey on the recorded Plan.

The Kunkles' position in this case is to the contrary. This Court has not rejected the Kunkles' contention that there was excess property in the Plan still owned by the original grantor, Ralph C. Miller, because the Court has never heard the Kunkles' evidence on or decided that issue. In fact, it is implicit in this Court's ruling that there was excess property in the Ralph Miller Plan of Lots:

- 6 -

"The trial court ruling was that [Appellant] failed to prove anything except that there was more ground in the Ralph Miller Plan of Lots than was originally anticipated. [Appellant] did not prove that he was entitled to that excess ground. …" (Trial Court Opinion, p.6).

Res judicata requires four elements:

1. Identity of issues;

2. Identity of the causes of action;

3. Identity of parties and persons;

4. Identity of quality or capacity of parties suing or being sued.

Standard Pennsylvania Practice 2d §6561.

All four elements are clearly satisfied here. [Appellant] is seeking to litigate the same issue, i.e., that there was some error in the subdivision plan or the property that was conveyed to him, that this Court previously decided against him after he presented his evidence in the previous case. Second, comparison of his Counterclaim in this case with the Complaint [Appellant] filed at No. 4980 of 1989 shows that he is seeking the same relief, that is to quiet title to the same disputed land previously in question in his favor. Third, [Appellant] is seeking to assert this against the same parties or their assigns, as he did in the other case. Finally, the quality or capacity in the persons for or against whom the claim is being made is obviously identical, because the parties are the same. Where a finding of trespass against a defendant in a previous case necessarily entailed that the plaintiffs had to have title, such finding is res judicata in a later ejectment case. Loomis Lake Association v. Smith, 466 Pa. Super. 612, 531 A.2d 1152 (1987). [Appellant] is therefore barred from seeking ejectment in this case.

In addition, [Appellant] is barred by collateral estoppel from relitigating the survey issues he is attempting to assert in this case. Collateral estoppel applies if:

1. The issue decided in the prior case is identical to the one presented in the later case;

2. There was a final judgment on the merits;

3. The party against whom the plea is asserted was a party or in privity with a party in the prior case;

4. The party or person privy to the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding; and

5. The determination in the prior proceeding was essential to the judgment.

Meridian Oil and Gas v. Penn Central, 418 Pa. Super. 231, 614 A.2d 246 (1992), app. den., 532 Pa. 649, 627 A.2d 180.

All these elements are met, and [Appellant] is barred by collateral estoppel from his counterclaim in this case.

1. The issue decided in the prior case is identical to the one he attempts to present in this case, i.e. the "calls" on the recorded subdivision plan are somehow wrong, which has already been decided by this Court in the case at No. 4980 of 1989;

2. There was a final judgment in the previous case on the merits, affirmed by the Superior Court;

3. The collateral estoppel is being asserted against [Appellant] who was a party in the previous case.

4. [Appellant] had a full and fair opportunity to litigate the issue in the prior proceeding, and presented his own testimony and the expert testimony of his surveyor, which was rejected by this Court;

5. The determination by this Court that the subdivision plan and its survey was correct, and [Appellant] received everything he bargained for, being 5.835 acres, was essential to the judgment of this Court that [Appellant] was not entitled to the acreage at issue in the previous case and this case.

[Appellant] has understandably and artfully worded his Counterclaim in this case to attempt to make it look different from the Complaint he previously filed and was defeated upon. However, it is clear that the claim he is asserting is the same, and he is barred in this Counterclaim by both res judicata and collateral estoppel, and the Counterclaim should be dismissed.

As to [Appellant's] Motion, the claims of [the Kunkles] in this case were not litigated at No. 4980 of 1989. Perhaps [the Kunkles who were] the defendants therein, [and who are] the plaintiffs herein, technically should have withdrawn their claims. They did not technically withdraw their claims, but elected to present no testimony and as such this was equivalent to a withdrawal of their counterclaims and as such no final decision was made on the merits in order for the application of res judicata or collateral estoppel to apply. Accordingly, the Motion for Summary Judgment of [Appellant] will be denied.

Trial Court Opinion, 8870 of 1995, 9/23/1997, at 1-8.

At the conclusion of the non-jury trial regarding the Kunkles' quiet title action, the trial court dismissed the action, and explained:

It is apparent to this Court and all parties that the original Survey or Plan of the Ralph Miller Plan of Lots did not utilize all of the Miller property and there is excess ground which was not shown on that Plan of Lots. The question before the Court is "where is that ground, who owns it", and have [the Kunkles] or [Appellant] proven the same.

[The Kunkles] attempt to prove their case through the testimony of Richard A. Sunder and the survey prepared by him while [Appellant] asserts his position through the testimony and survey of Gregory C. Parker.

[The Kunkles] attempt to place the excess ground as a thin rectangular strip of ground between Lots 1 and 2 through 5 of the Miller Plan consisting of .691 acres in accordance with the Sunder survey. However, Sunder admitted on cross-examination that no such gap existed in the original Miller Plan of Lots, but was "located" by him by coming 460 feet West along the Northern boundary of Lot 1, from a starting point 57 feet North from a corner set stone which was not contained in the Miller Plan of Lots nor referenced in any deed to the lots contained in that plan.

Furthermore, Mr. Sunder acknowledged that Lot 1 was bounded to the North by the original parent tract; to the South and West by Township Road 783; and to the East by Lots 2 through 5 and that the measurements contained in the original Miller Plan of Lots were inconsistent with those contained in his

survey and deed which formed the basis for [the Kunkles'] claim for title.

No strip of ground existed between Lot 1 and Lots 2 through 5 in the original Miller Plan of Lots, nor could there be since this would be in violation of the Local Ordinance which governs the size and shape of Lots in Salem Township. Further, the Southern lines of Mr. Sunder's survey, when added up, are inconsistent with the measurements as they exist in the field. If followed, it would cause one to be standing to the West of Township Road 783, far off of the property contained in Lot 1. This indicates that the location of the disputed ground cannot be placed between Lot 1 and Lots 2 through 5 as claimed by [the Kunkles].

Likewise, the testimony of Gregory Parker, for the [Appellant], as to the survey prepared by him, in the opinion of this Court, was also inconclusive as to the location of the excess ground. In his testimony, Parker agreed that Route 819 was a monument and agreed that the set stone in the Miller property was a monument. However, he refused to recognize the set stone as a monument in the Miller Plan of Lots. He testified that it was a monument for the Miller Tract but not for the Miller Plan. His reasoning was that the set stone was not called for in the description of Lot No. 1. In fact, there are no boundaries called for in the description of Lot No. 1. Lot No. 1 in the Deed to [Appellant] is simply described as Lot No. 1 in the Miller Plan. There are no adjoinders nor boundaries mentioned in [Appellant's] Deed. Parker's attempt to ignore what he admits to be a monument, is simply an attempt to bolster his conclusion. Parker, when asked by this Court, admitted that he could have placed the excess ground anywhere, but he chose to place it on the Northerly boundary of Lot No. 1 for no good or logical reason. By doing what he attempted to do, Mr. Parker ignored the East/West distances for Lot No. 1 and ignored the North/South distance for the Easterly boundary of Lot No. 1, none of which makes any sense in fact or in law.

Although everyone agrees that there is excess ground, no party has proven with certainty where the excess is located. Each expert witness lifts themselves by their own bootstraps, ignoring significant items that would compel a different conclusion. Each expert has admitted that they placed the ground where they wanted it and then tried to justify this conclusion with more conclusions.

Simply put, neither [the Kunkles] nor [Appellant] have proven where the excess ground is located. Each party argues that their survey is truer than the other. Which one is truer is not the question, the question is, has either survey properly located the excess ground. In the opinion of this Court they have not. This Court is of the opinion then that the testimony of Sunder and Parker as to their respective surveys is not accurate nor credible. As noted, each ignore those items that do not support this conclusion. The question of whether an expert's opinion is convincing or credible is a matter for the finder of fact. Duquesne Light v. Woodland Hills School District, __ Pa. Cmwlth. __, 700 A.2d 1038, 1047 (1997). In the opinion of this Court the placement of the excess ground by each surveyor was just short of mere speculation and neither was convincing to this Court.

Such being the case, this Court must dismiss [the Kunkles'] Complaint as [the Kunkles] have failed to prove where the excess ground is located and accordingly, have failed to prove that they own the parcel of ground claimed by them.

Trial Court Opinion, 8870 of 1995, 3/15/1999, at 7-10. In its conclusions, the trial court reiterated that it was dismissing the Kunkles' action because the Kunkles had "failed to prove that the excess ground was a .691 acres strip of ground running between Lot 1 and Lots 2 through 5 in the Miller Plan of Lots and that [the Kunkles] are entitled to any excess ground, wherever located." *Id.* at 11. On April 14, 1999, Appellant filed a notice of appeal. On July 29, 1999, we quashed Appellant's appeal noting that "[n]o post-trial motions ha[d] been filed[.]" Order, 7/29/1999, at 1.

On August 19, 2013, Appellant filed an emergency petition for special relief and/or to enforce judgment against E. Dale Kunkle.[1]  Appellant averred that "on or about April 22, 2013," Mr. Kunkle's attorney sent Appellant a letter "threatening to erect a fence through his driveway and his shrubbery." Appellant's Emergency Petition for Special Relief and/or to Enforce Judgment, 8/19/13, at 1.  Appellant further averred that he responded in writing by stating that Appellant's "shrubbery and driveway are not located on [Mr. Kunkle's] property and that [Mr. Kunkle] is trespassing and must immediately stop trespassing." *Id.*  Appellant averred that "[o]n or about August 15, 2013[,] [Mr. Kunkle] unlawfully entered the property of [Appellant], inserted steel pins in [Appellant's] driveway, cut down and removed bushes that were located thereon and has threatened … to cut more bushes down that are located on [Appellant's] property and also erect a fence through [Appellant's] driveway." *Id.*

Appellant's petition requested that the trial court:  1) enjoin Mr. Kunkle from entering Appellant's property "specifically but not limited to the area immediately west of lots 2-5 as recorded in the Ralph Miller Plan of Lots"; 2) enjoin Mr. Kunkle "from cutting, removing or otherwise damaging [Appellant's] bushes or other landscaping"; and 3) enjoin [Appellant] from

_____

[1] At the time of Appellant's August 19, 2013 emergency petition, Helen Kunkle had passed away and was not included in the caption of the emergency petition.

- 12 -

the erection of a fence or any other obstruction that impairs the quiet use and enjoyment of [Appellant's] property specifically but not limited to the area immediately west of lots 2-5 as recorded in the Ralph Miller Plan of Lots". *Id.* at 2.

On August 26, 2013, the trial court ordered that "[b]oth parties … maintain the status quo of the disputed strip of excess ground and/or its disputed exact location as to each party's actions when the case was concluded pursuant to the March 12, 1999 Order of the Court." Order, 8/26/13, at 1. The trial court further ordered that "neither party may have access to, or enter upon, the disputed subject areas except as to status quo activities." *Id.* at 2. The trial court scheduled an evidentiary hearing for November 21, 2013. *Id.*

On September 24, 2013, Appellant filed an emergency petition for special relief and/or to enforce judgment against Vince. Appellant averred that Vince is the owner of Lots #3B, 4, and 5 of the Ralph Miller Plan of Lots. Appellant's Emergency Petition for Special Relief and/or to Enforce Judgment, 9/24/13, at 1. Appellant further averred that "[o]n or about September 7, 2013, [Vince] entered onto the area immediately west of lots 2-5 as recorded in the Ralph Miller Plan of Lots and proceeded to cut the grass." *Id.* Appellant requested that the trial court enjoin Vince consistent with the trial court's August 26, 2013 order. *Id.* at 2.

On September 30, 2013, Appellant filed a motion to amend the caption of his original emergency petition to add Vince. Motion to Amend Caption

and Add Additional Defendant, 9/30/13, at 1. On October 4, 2013, the trial court granted the motion to amend the caption. On the same date, the trial court enjoined Vince consistent with its August 26, 2013 order.

On November 21, 2013, the trial court continued the evidentiary hearing. On December 26, 2013, Mr. Kunkle filed a motion to dismiss Appellant's emergency petition. Mr. Kunkle averred "[a]s the Court knows, [the prior trial court] decided that no one proved ownership to the excess ground … and dismissed all claims and counter claims." Motion to Dismiss the Emergency Petition for Special Relief and/or to Enforce Judgment, 12/26/13, at 1. On the same date, the trial court dismissed Appellant's emergency petition, and ordered that "[n]evertheless, all terms and conditions of previous Orders of Court … shall remain in full force and effect." Order, 12/26/13, at 1.

On January 22, 2014, Appellant filed a notice of appeal. The trial court did not direct Appellant to comply with Pa.R.A.P. 1925. The trial court issued an order pursuant to Pa.R.A.P. 1925(a), stating:

> AND NOW, to wit, this 25th day of February, 2014, it appearing to the Court that a Notice of Appeal has been filed by [Appellant], in the above-captioned matter, at 157 WDA 2014; and, it is hereby noted that, the reasons for the Order of Court dated December 26, 2013, (incorrectly dated 2014) were set forth in said Order of Court, in reference to [Mr. Kunkle's] *Motion to Dismiss the Emergency Petition for Special Relief and/or to Enforce Judgment,* as well as the prior Order of Court dated March 12, 1999; and, that the relief sought by [Appellant] in his *Emergency Petition* was, in fact, granted by this Court's Order dated December 26, 2013.

This Order is being entered to comply with Pennsylvania Rule of Appellate Procedure 1925(a).

Order, 2/26/14, at 1.

Appellant presents the following issues for our review:

I. Did the trial court abuse its discretion and/or erred as a matter of law by not concluding that when the previous trial court specifically stated in its Findings of Fact, Discussion, Conclusion of Law, and Order, that "the disputed ground cannot be placed between Lot 1 and Lots 2 through 5", and is supported by testimony and evidence, and the previous trial court having dismissed all appellees claims to the same ground; that the issue of the disputed ground, at least that its not to be located between Lot 1 and Lots 2 through 5, is decided and determined, and thus the location of Lot 1's eastern boundary is decided and determined, and the disputed ground alleged to be between Lot 1 and Lots 2 through 5, is in fact, part of appellant's Lot 1?

II. Did the trial court abuse its discretion and/or erred as a matter of law by dismissing appellant's Emergency Petition For Special Relief and/or To Enforce Judgment and for failing to enter a final judgment in appellant's favor based on the previous trial court's Findings of Fact, Discussion, Conclusion of Law, and Order, that decided appellant owns the disputed ground immediately west of Lots 2 through 5, and for failing to then enforce said judgment, grant the proper relief by way of ejectment and/or quiet title, grant damages, and forever bar these issues from being re-litigated by res judicata and collateral estoppel?

Appellant's Brief at 10.

We review the trial court's dismissal of this action under an abuse of discretion standard. **Coulter v. Ramsden,** 94 A.3d 1080, 1086 (Pa. Super. 2014). In **Coulter**, we expressed:

Judicial discretion requires action in conformity with law on facts and circumstances before the trial court after hearing and consideration. Consequently, the court abuses its discretion if, in resolving the issue for decision, it misapplies the law or

- 15 -

exercises its discretion in a manner lacking reason. Similarly, the trial court abuses its discretion if it does not follow legal procedure.

*Id.*

Here, our review of the record reflects that Appellant's issues attempt yet again to revive his prior contentions, arguments, and issues regarding the ownership of the disputed land. We cannot entertain Appellant's renewed efforts. In disallowing an employer to "revisit … and, in a disguised way, to relitigate," the initial finding of an employee's disability, our Supreme Court observed:

> We acknowledge that the term "res judicata" is a somewhat sloppy term and that it is sometimes used to cover both *res judicata* itself (claim preclusion) as well as collateral estoppel ("broad" *res judicata* or issue preclusion). Collateral estoppel, broad *res judicata* or issue preclusion "forecloses re-litigation in a later action, of an issue of fact or law which was actually litigated and which was necessary to the original judgment." *City of Pittsburgh v. Zoning Board of Adjustment of Pittsburgh,* 522 Pa. 44, 55, 559 A.2d 896, 901 (1989).

*Hebden v. W.C.A.B. (Bethenergy Mines, Inc.),* 632 A.2d 1302, 1304 (Pa. 1993).

Our Commonwealth Court has explained:

> Strict res judicata, also known as claim preclusion, provides that where there is a final judgment on the merits, future litigation between the parties on the same cause of action is prohibited. *Myers v. Workers Comp. Appeal Bd. (Univ. of Pennsylvania),* 782 A.2d 1108 (Pa.Cmwlth.2001), *appeal denied,* 568 Pa. 688, 796 A.2d 319 (2002). Four factors must exist in order for claim preclusion to apply: (i) identity in the thing being sued upon or for; (ii) identity of the cause of action; (iii) identity of the persons and parties to the action; and (iv) identity of the quality or capacity of the parties being sued. *Id.* A default judgment is

- 16 -

res judicata with regard to transactions occurring prior to entry of judgment. *Quaker City Chocolate Confectionery Co. v. Warnock Bldg. Ass'n.,* 347 Pa. 186, 32 A.2d 5 (1943); *Zimmer v. Zimmer,* 457 Pa. 488, 326 A.2d 318 (1974).

**McGill v. Southwark Realty Co.,** 828 A.2d 430, 435 (Pa. Cmmwlth. 2003).

We recently opined:

*Res judicata,* which is also known as claim preclusion, holds that a final judgment on the merits by a court of competent jurisdiction will bar any future action on the same cause of action between the parties and their privies. *McArdle v. Tronetti,* 426 Pa.Super. 607, 627 A.2d 1219, 1222 (1993). The doctrine has application where the following are present: (1) identity of the thing sued upon or for; (2) identity of the cause of action; (3) identity of persons or parties to the actions; and (4) identity of the quality or capacity of the parties suing or sued. *See id.* at 1222; *Martin v. Poole* [232 Pa.Super. 263], 336 A.2d [363], 366 [ (Pa. Super. 1975)]. "[A]ll matters which might have been raised and decided in the former suit, as well as those which were actually raised therein, are *res* [ ] *judicata* in a subsequent proceeding between the same parties and their privies." *Nevling v. Commercial Credit Co.,* 156 Pa.Super. 31, 39 A.2d 266, 267 (1944); *see also McArdle,* 627 A.2d at 1222....

In determining whether *res judicata* should apply, a court may consider whether the factual allegations of both actions are the same, whether the same evidence is necessary to prove each action and whether both actions seek compensation for the same damages. *Mintz v. Carlton House Partners, Ltd.,* 407 Pa.Super. 464, 595 A.2d 1240, 1246 (1991). "The thing [that] the court [should] consider is whether the ultimate and controlling issues have been decided in a prior proceeding in which the present parties actually had an opportunity to appear and assert their rights." *Stevenson v. Silverman,* 417 Pa. 187, 208 A.2d 786, 788 (1965) (emphasis omitted) (quoting *Hochman v. Mortgage Fin Corp.,* 289 Pa. 260, 137 A. 252, 253 (1927)). Although based upon facts in common with an earlier action, *res judicata* will not bar a subsequent action where the damages for which relief was sought in the earlier action were entirely different. *Pontiere v. James Dinert, Inc.,* 426 Pa.Super. 576, 627 A.2d 1204, 1210 (1993); *Melat v. Melat,* 411 Pa.Super. 647, 602 A.2d 380, 383 (1992). Indeed, two suits [that] have

- 17 -

arisen out of the same set of factual circumstances may involve entirely separate causes of action. *McArdle,* 627 A.2d at 1222; *Martin,* 336 A.2d at 366.

***Rearick v. Elderton State Bank,*** 97 A.3d 374, 380 (Pa. Super. 2014) (internal citation omitted).

After careful review, we disallow Appellant's "disguised way, to relitigate" the ownership of the disputed property. **Hebden, supra,** at 1304. Indeed, even in the preamble to the trial court's December 26, 2013 order, it is apparent that this matter is a revival of the prior property ownership issues and legal dispositions. *See generally* Order, 12/26/13. The parties and the underlying allegations in the instant petition and the prior litigation are the same. The property is the same. Moreover, the "ultimate and controlling issues have been decided in a prior proceeding," and the relief being sought now presently does not differ from the prior relief sought. **Rearick, supra,** at 380. Significantly, Appellant's emergency petition sought, *inter alia*, to bar Mr. Kunkle and Vince from entering "the area immediately west of lots 2-5," which is the same property he unsuccessfully sought to reform or quiet title to previously. Further, Appellant's issues ask us to determine whether the trial court erred in failing to conclude that "the disputed ground alleged to be between Lot 1 and Lots 2 through 5, is in fact, part of [A]ppellant's lot 1," and for failing to enter a final judgment in appellant's favor … and for failing to then enforce said judgment, grant the proper relief by way of ejectment and/or quiet title, grant damages, and forever bar these issues…" Appellant's Brief at 10.

Pursuant to the doctrines of *res judicata* and collateral estoppel, we decline to reach Appellant's issues, thereby affirming the trial court's order. We also deny as moot the Kunkles' motion to quash.

Order affirmed. Appellee Kunkle's Motion to Quash denied as moot.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>12/11/2014</u>